## Case No. 15,357.

UNITED STATES v. HERTZ et al.

[3 Pittsb. Leg. J. 194; Whart. Prec. Ind. § 1123, note.]

Circuit Court, E. D. Pennsylvania. 1855.

VIOLATION OF NEUTRALITY LAWS — HIRING PERSONS TO ENLIST—EVIDENCE.

1. If a person. within the jurisdiction of the United States, engages another to go beyond the limits of the United States with intent to enlist in the service of any foreign prince or state, and there be an intent on both sides that, after these acts have been performed, a consideration shall be paid to the party so engaging to enlist, the hiring or retaining denounced by the second section of the act of April 20, 1818, is complete.]

[2. The intent of the person accused may be inferred both from his own acts and declarations and the acts and declarations of the person or persons whom he is alleged to have hired or engaged for the purpose specified; for where two or more persons combine to do an unlawful act, the acts of each may be given in evidence for the purpose of explaining the general transaction.]

[This was an indictment against Hertz & Perkins for an alleged violation of the second section of the act of April 20, 1818, by hiring

persons to go beyond the jurisdiction of the United States to enlist in the service of a foreign prince or state.]

KANE, District Judge (charging jury). I intended, gentlemen of the jury, when we separated, to avail myself of the leisure afforded me to put my charge in writing, but I have been prevented by controlling circumstances, from doing so, and my remarks to you, therefore, will be less closely connected perhaps, though I trust they will not be on that account less intelligible and clear. The case has involved, in its progress, a train of facts of very considerable political interest—perhaps of more general interest in that aspect of it, than in its bearing on the questions which are to be decided by your verdict. There are very few among us, probably none, who have not felt aggrieved at the tone with which the press of foreign countries, and occasionally of foreign statesmen of the day, have commented upon what they have been pleased to call the over alacrity of the American people to engage in military controversies in which they had no rightful part. Our people and our government have been accused of forgetting the obligations of neutrality, and pushing ourselves forward into the conflicts of foreign nations, instead of minding our own business as neutrals and leaving belligerents to fight out their own quarrels. For one, I confess that I felt surprised, as this case advanced, to learn that, during the very time that these accusations were fulminated against the American people by the press of England, there was, on the part of eminent British functionaries here, a series of arrangements in progress, carefully digested, and combining all sorts of people under almost all sorts of influences, to evade the laws of the United States by which our country sought to enforce its neutrality; arrangements matured, upon a careful inspection of the different sections of our statutes, ingeniously to violate their spirit and principle without incurring their penalty, and thus enlist and send away soldiers from our neutral shores to fight the battles of those who were incontinently and not over courteously admonishing us to fulfil the duties of neutrality. I allude to these circumstances, and this train of thought, gentlemen, not because it is one that should influence your action as jurors, but because I feel it my duty to guard you against its influence. The question which you have to decide is not whether there has been an effort on the part of any foreign functionary to evade the provisions of our acts of congress, which are cited in these bills of indictment; your verdict will respond to the simple question, are these two men guilty of the crime with which they are charged.

In order that my remarks may not hereafter be embarrassed by the necessity of using the plural when the singular alone is the appropriate phraseology, I will say to you, at the outset, that there is no evidence against one of these defendants. Before a jury can properly convict an individual of the commission of a crime, they must be satisfied, by clear evidence, that the crime has been committed by some one. We have no statute which affects to punish braggart garrulity; and, unless the particular offence of enlisting certain definite persons has been committed by Perkins, one of the defendants, though he may have proclaimed upon the house-tops that he has recruited armies innumerable, no jury can properly convict him of the offence he professes to have engaged in.

I pass to the consideration of the case of the defendant, Hertz. He stands indicted, sometimes jointly with another, sometimes alone, with the offence of having hired and retained certain persons to go out of the United States, for the purpose of enlisting and entering themselves as soldiers in the service of a foreign prince, state, or territory. The act of congress is in these words (I read the words material to the question, leaving out those which apply to a different state of circumstances): "If any person shall, within the territory of the United States, hire or retain any person to go beyond the limits of the United States, with the intent to be enlisted in the service of a foreign prince, he shall be deemed guilty of a high misdemeanor." The question which you have to pass upon is, did Henry Hertz hire or retain any of the persons named in these bills of indictment to go beyond the limits of the United States with the intent to be enlisted or entered in the service of a foreign state? Did he hire or retain a person? What ever he did was within the territory of the United States. The hiring or retaining does not necessarily include the payment of money on the part of him who hires or retains another. He may hire or retain a person with an agreement that he shall pay wages when the services shall have been performed. The hiring or retaining a servant is not generally by the payment of money, in the first instance, but by the promise to pay money when the services shall have been performed: and so a person may be hired or retained to go beyond the limits of the United States, with a certain intent, though he is only to receive his pay after he has gone beyond the limits of the United States with that intent. Moreover, it is not necessary that the consideration of the hiring shall be money. To give to a person a railroad ticket, that cost $4, and board and lodge him for a week is as good, as a consideration for the contract of hiring, as to pay him the money with which he could buy the railroad ticket and pay for his board himself. If there be an engagement on the one side to do the particular thing, to go beyond the limits of the United States with the intent to enlist, and on the other side an engagement, that when the act shall have been done, a consideration shall be paid to the party performing the services or doing the work, the hiring and retaining are complete.

The meaning of the law then, is this: that if any person shall engage, hire, retain or employ another person to go outside of the United States to do that which he could not do if he remained in the United States, viz. to take part in a foreign quarrel; if he hires to go, knowing that it is his intent to enlist when he arrives out—to enlist and engage him, or carry him, or pay him for going, because it is the intent of the party to enlist; then the offence is complete within the section. Every resident of the United States has a right to go to Halifax and there to enlist in any army that he pleases; but it is not lawful for a person to engage another here to go to Halifax for that purpose. I trust I make myself sufficiently clear to the jury. that they may comprehend the distinction. It is the hiring of the person to go beyond the United States, that persons having the intention to enlist when he arrives out, and that intention known to the party hiring him, and that intention being a portion of the consideration before he hires him, that defines the offence.

I believe that after making this comment upon the law, I might pass on to the fact; but it occurs to me to add, that you are not to require proof of the connexion of the defendant with each particular fact and circumstance which has been given in evidence, to show the working out of the general plan. If you believe the witnesses, the object here was to effectuate an enlistment beyond the borders of the United States, and yet escape from the provisions of this section; to do effectively and yet not seem to do. If you are satisfied; no matter what was the avowed object of the party, no matter what the pretext; if you are satisfied that Henry Hertz was here engaged in hiring and retaining men to go off to Nova Scotia, there to enlist, that being their intention, and he believing that it was so, and therefore hiring them; then, no matter what was the costume or mask which the transaction wore, he has committed the offence charged in the bill of indictment.

As to the evidence, gentlemen, you have listened to it very carefully, and it has been commented upon abundantly. I do not know that it is my duty to detain you by a single remark on it. It is all on one side. Whether it establishes the fact is for you to judge. It is the law of the land that, where two or more persons combine together to do an unlawful act, the acts of each may be given in evidence for the purpose of explaining the general transaction. You will see that otherwise it would be impossible, in a case like this, to develop its true history and character. The enlistment necessarily includes the action of different parties; the concert between them is to be inferred from their acts. The intention of the party engaged or retained to enlist, is to be gathered from his conduct and declaration here, from his conduct after he reaches the foreign country, and from the action of third persons with whom he perfects the enlistment that he may have contracted for here. You are, therefore, while looking primarily at the conduct of Hertz, to look also at the actions of others tending to the same objects; and if you judge that they were actually in concert with him, then all their acts, done in pursuance of the common purpose and plan, are to be regarded as his.

With these remarks, I leave the case in your hands.

At the conclusion of the judge's charge, the jury retired and returned in about fifteen minutes. On taking their seats, the clerk of the court, in the usual form, put the question: "Gentlemen of the jury, have you concluded upon your verdict?" To which the foreman replied, "We have."

Clerk—"How say you, guilty or not guilty?"

Foreman—"Guilty as to Henry Hertz, in the manner and form as he stands indicted on all the bills of indictment; as respects Emanuel C. Perkins, not guilty."

The jury were then discharged.